IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERCONTINENTAL GREAT BRANDS LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 13 C 321 |
| KELLOGG NORTH AMERICA COMPANY, KELLOGG USA, INC., KEEBLER COMPANY, KEEBLER FOODS COMPANY, and KELLOGG SALES COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Intercontinental Great Brands LLC (IGB) has sued defendants Kellogg North America and related entities (collectively Kellogg) for patent infringement. IGB contends that Kellogg manufactures products that infringe U.S. patent number 6,918,532 B2 (the '532 patent), in particular Claims 1, 3, 4, 6, 12, 13, 15-17, 23, 24, 26-37, 39-45 of that patent. The parties have submitted briefs regarding the construction of certain terms in the claims. The Court held a claim construction hearing, followed by supplemental briefing. The Court rules on the construction of disputed terms as set forth below.[1]

### Background

The '532 patent covers a "Resealable Food Container." It was issued on July 19,

---

[1] The Court apologizes for the inordinately long period that it took to issue this decision following completion of the supplementary briefing.

2005. The listed inventors are five individuals from New Jersey, who first filed the application for the patent in April 2003. The patent lists IGB's parent company Kraft Foods Holdings, Inc. as the patent's exclusive licensee.

The Macfarlane Group Sweden, also known as Reseal-It, works with Fuji Packaging GmbH to produce re-sealable packages. In October 2007, Regath HB, a patent holding company for Macfarlane, requested an *ex parte* reexamination of the '532 patent. The United States Patent and Trademark Office (PTO) granted the request. In April 2010, the PTO issued a rejection of the '532 patent claims. IGB appealed the decision to the Board of Patent Appeals (BPA). In August 2008, the BPA reversed, finding that all claims of the '532 patent were patentable. On October 25, 2011, the PTO issued a reexamination certificate that left the original claims in the '532 patent intact and added a number of new claims.

The '532 patent describes a container that protects food products and helps keep them fresh. The container enables a consumer to select a food item from the container through a resealable panel at the top. The summary of the invention section of the '532 patent's specification states that "the purpose of the present invention is to provide a new and improved container for food products such as rigid food articles, for example cookies and the like . . . ." '532 Patent, col. 1:40-41.

The '532 patent includes sixty-seven claims, with claims 26-67 having been added after the reexamination proceedings. Three of the claims that IGB asserts in this case are independent claims, specifically, claims 1, 13, and 34. Three of the disputed terms are contained in one or more of these claims. The Court sets out claims 1 and 34 in their entirety, highlighting the disputed language:

1. A polygonal shaped food container comprising:

**a frame** defining the polygonal shape of the container, said container having a top, a bottom and sides connecting the top and bottom, the frame containing a food product comprised of discrete food articles;

a wrapper surrounding said frame, said wrapper **forming the top sides and bottom of the container**;

said top having an access opening sufficiently large to provide hand access to substantially all of the discrete food articles contained within the frame, such that substantially any one of the discrete food articles can be accessed and removed individually through said access opening; and

**a sealing layer**, adhesively sealed to said top around said opening, said sealing layer including a starter portion located near a side of the top which can be grasped by a user, said sealing layer being releasable when said starter portion is pulled in a direction away from said side to in turn pull and thereby release at least a portion of said sealing layer to provide the hand access to said top access opening and reclosable against said top to seal said opening when said sealing layer is moved back against the said top.

'532 Patent, col. 5:29-51 (emphasis added). Claim 13 is virtually identical to claim 1; it describes a rectangular food container rather than a polygonal container and makes a small number of corresponding changes. Claim 34, which is one of the claims added after the reexamination, reads as follows:

34. A polygonal shaped food container comprising:

**a frame** defining the polygonal shape of the container, the frame having a bottom, sides and an upper periphery portion, the frame containing a food product comprised of discrete food articles;

**an overwrap** encasing the frame, the overwrap forming an overwrap top, overwrap bottom and overwrap sides of the container over the frame and defining the top, bottom and sides of the container, the overwrap top having at least a pair of facing overwrap perimeter portions inward of the periphery portion of the frame;

the overwrap top having a reclosable access opening defined at least in part by the perimeter portions, the opening sufficiently large to provide hand access to substantially all of the discrete food articles contained

3

within the frame such that substantially any one of the discrete food articles can be accessed and removed individually through the reclosable access opening, the upper periphery portion of the frame supporting the overwrap perimeter portions so that the overwrap perimeter portions are in a plane generally parallel to the bottom of the frame, the overwrap perimeter portions capturing the frame in the encasing overwrap to guard against unintentional removal of the frame through the opening from the encasing overwrap; and

**a sealing layer** adhesively sealed to the overwrap top around the reclosable access opening, the sealing layer including a starter portion located near a side of the overwrap top which can be grasped by a user, the sealing layer being releasable when said starter portion is pulled in a direction away from the side to in turn pull and thereby release at least a portion of the sealing layer to provide the hand access to the reclosable access opening and reclosable against the overwrap top to seal the access opening when the sealing layer is moved back against the overwrap top.

Ex Parte Reexam. Certif., col. 1:57–col. 2:24 (emphasis added).

The parties presented seven claim terms to the Court for construction. They subsequently stipulated to the definition of one term found in claim 1, specifically, "forming the top sides and bottom of the container." They agree that this means, "forming the top, sides, and bottom of the container"; in other words, they essentially agreed that commas were missing. Defs.' Opening Br. at 24.

The parties have proposed competing definitions for the three terms: "sealing layer," "frame," and "overwrap." IGB has also asked the Court to construe three additional terms: "additional perimeter portions," "facing overwrap portions," and "facing perimeter portions."

"When construing claim terms, we first look to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013). "'[E]xtrinsic evidence in general' is

'less reliable than the patent and its prosecution history in determining how to read claim terms.'" *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc)).

Claim terms are generally given "their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*, 746 F.3d 1302, 1309 (Fed. Cir. 2014) (internal quotation marks omitted). "'There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *Starhome GmbH v. AT & T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014) (internal quotation marks omitted).

**Discussion**

**1.  Sealing layer**

The term sealing layer appears in all of the asserted claims of the '532 patent. The parties propose competing definitions of this term.

Kellogg says that sealing layer means "a layer of material distinct from the top of the wrapper having adhesive thereon for sealing to the upper surface of the top of the wrapper." Defs.' Opening Br. at 9. IGB says that the sealing layer is "[p]art of the container formed in a surface of the container other than an end surface." Pl.'s Reply Br. at 9. IGB has clarified that by the phrase "other than an end surface," it means to refer to the top of the container. *Id.* at 11. Thus IGB's definition of "sealing layer" essentially is: "part of the container formed in the top of the container." (IGB has not clarified what it means for the sealing layer to be "formed in" a surface of the container.)

5

Hrg. Tr. at 19. The essential difference between the two sides' proposed definitions is that Kellogg contends the sealing layer must be a layer distinct from the top of the container, whereas IGB contends the sealing layer is part of the top of the container, not a distinct layer.

IGB's proposed definition of "sealing layer" makes no sense when the term is read in context. "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms," and "the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314.

The claim language expressly requires the sealing layer to be "*sealed to* said top." '532 Patent, col. 5:42 (emphasis added). The sealing layer cannot be *sealed to* the top of the container if it *is* part of the top. The Court agrees with Kellogg that the claim language requires the sealing layer to be a distinct layer from the top of the container.

The '532 patent's specification is consistent with this understanding of the sealing layer as distinct from the top of the container. *See Phillips*, 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). The patent's abstract describes a "wrapper [that] forms a top of the container which has an access opening" and "[a] sealing layer [that] is adhesively sealed to the top around the opening" and that "is resealable against the top layer. . . ." '532 Patent, Abstract. The summary of the invention similarly describes "[a] sealing layer [that] is adhesively sealed to the top" and that is "releasable from the top" and "reclosable against the top." *Id.*, col. 1:56-61. And

the "detailed description of the invention" describes, among other examples, a top that has a flap that may be pulled back as well as "[a] sealing layer [that] is affixed to the flap." *Id.*, col. 3:19. Thus the patent specification differentiates the sealing layer from the component(s) of the container that form its top.

IGB contends that its proposed definition is superior because it "directly quotes" the specification, namely the summary of invention. Pl.'s Reply Br. at 12. The phrase in question says that the container includes "an easily accessible opening seal formed in a surface other than an end surface, which seal can reclose the container during use." '532 Patent, col. 1:48-50. This language, however, refers to where the seal is formed; it does not describe the sealing layer itself. But even if read as IGB urges, this single reference does not trump the clear language of the claims, which as discussed earlier make it clear that the sealing layer is not part of the top; it is a distinct layer that seals to the top.

This does not mean, however, that the sealing layer must be physically separated from the top of the container or, more specifically, from the wrapper that forms the top of the container as described in claim 1. In particular, the requirement of a distinct layer does not preclude the sealing layer from being laminated to another layer or layers of the wrapper. One layer of material that is laminated to another is no less a distinct layer. In other words, "distinct" and "separate" have different meanings in this context.

The Court also disagrees with Kellogg's contention that the sealing layer must include adhesive. The claim does not require this. Though "adhesive seal[ing]" of the adhesive layer to the top of the container is required, there is nothing in the claim

7

language that requires there to be adhesive *on the sealing layer*, as opposed to, for example, on the top of the container where the sealing layer is intended to adhere. The Court acknowledges that the specification's description of the preferred embodiment of the invention states that "[a]dhesive 26 is applied to the surface of sealing layer 20 which is in contact with top 12." '532 Patent, col. 3:33-34. Under normal circumstances, however, it is improper to import limitations from the specification that are not part of the claims. *See, e.g., Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012); *Phillips*, 415 F.3d at 1323. And the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir. 2012) (citing *Phillips*). Because there is nothing in the claims that indicates that the adhesive is to be applied to the sealing layer, the Court declines to read the patent as requiring this.

**2. Frame**

The next term the Court must define is "frame," which appears in claims 1, 13, and 34. As noted earlier, the claims say that the frame "defin[es] the . . . shape of the container" and "contain[s] a food product. . . ." '532 Patent, col. 5:30-32; *see also id.*, col. 6:33-36; Reexam. Certif., col. 1:58-60. Claim 1 says that a wrapper "surround[s] said frame" and "form[s] the top[,] sides[,] and bottom of the container," and Claim 13 says that a wrapper "surround[s] said frame" and "form[s] [the] generally rectangular top of the container." '532 Patent, col. 5:34-35, col. 6:38-39. Claim 34 says that "an overwrap encase[es] the frame" and "form[s] an overwrap top, overwrap bottom and overwrap sides of the container over the frame." Reexam. Certif., col. 1:62-64.

8

IGB's proposed construction of frame is "a tray with a bottom and sides." Defs.' Opening Br. at 19. Kellogg's proposed construction is "a tray for holding and protecting a food product." *Id.*

The Court has a hard time seeing why it is necessary or appropriate to include in the definition of the single word frame a requirement that the frame "hold" the food product, as Kellogg urges. Other language in the claims requires the frame to "contain[s] a food product." *See, e.g.*, '532 Patent, col. 5:32. There is no need to build this concept into the definition of the single word, frame. Thus the parties' dispute boils down to whether the frame must have sides.

The claim's plain language requires the frame to be capable of "containing" a food product. The Court does not see how a frame without sides may be said to "contain" a food product. As the claim construction hearing, counsel for Kellogg made reference to the flat circular structure, typically made of cardboard, on which pizza is sometimes served or delivered. But that structure does not "contain" a food product; it "holds" a food product. Containing implies that the food product is, at least to some extent, *within* the structure that holds it.

When the Court asked Kellogg's counsel at the claim construction hearing how the frame could "contain" a food product without having sides, counsel replied that "it's cooperating with the container that's got a top and bottom sides around it." Hrg. Tr. at 78. Indeed, claim 1 describes "said container having a top, a bottom and sides . . . ." '532 Patent, col. 5:30-31. But as the Court noted at the claim construction hearing, Claim 1 does not state that the frame cooperates with the container to contain food. Hrg. Tr. at 78-79. It refers, instead, to the "*frame* containing a food product." '532

Patent, col. 5:32.

The Court concludes that the claim requires the frame to have sides and therefore adopts IGB's proposed definition.

### 3. "Overwrap"

The parties also dispute the meaning of the term "overwrap," which appears in claim 34, one of the claims that was added to the '532 patent following the reexamination. Claim 34 describes the overwrap as "encasing the frame" on all sides. Reexam. Certif., col. 1:62. The claim also describes the overwrap top as "having a reclosable access opening . . . sufficiently large to provide hand access to substantially all of the discrete food articles contained within the frame," a point to which the Court will return momentarily. *Id.*, col. 2:1-5.

Kellogg urges the Court to construe overwrap as used in claim 34 as "[a] tamper evidence structure which completely surrounds the wrapper." Defs.' Opening Br. at 21. By contrast, IGB contends that overwrap is essentially a synonym for the term wrapper as used in other claims in the patent.

Kellogg invokes claims 11 and 22 in support of its proposed construction. These claims, which depend from claims 1 and 13 respectively, use the term overwrap to describe a structure that surrounds the wrapper—in other words, the same way in which Kellogg says the term should be construed for purposes of claim 34. Claim 11 describes a "tamper-evident structure [that] comprises an overwrap surrounding said wrapper," and claim 22 refers to a "tamper-evident structure [that is] an overwrap surrounding said wrapper." '532 Patent, col. 6:27-29, col. 8:8-10. The "summary of the invention" section of the specification further states that "the tamper-evident structure

may include . . . an overwrap surrounding the wrapper." *Id.*, col. 1:65-66, col. 2:3-4. Kellogg argues that as used in claim 34, "overwrap" should be read consistently with its usage elsewhere in the patent.

The Court disagrees and concludes that IGB has the better of the argument. Claim 34, unlike claims 11 and 22, does not describe two separate wrappers. Rather, after describing the frame, claim 34 immediately describes the overwrap without first (or later) describing any other sort of wrapper or other structure encasing the frame. In addition, the Court agrees with IGB that Kellogg's proposed construction would render claim 34 essentially incoherent. As IGB points out, and as the Court noted earlier, claim 34 requires the "overwrap" to have an access opening in the top through which one can access the food items inside. As IGB argues, this would not be possible if the overwrap were, as Kellogg proposes, a "tamper evidence structure which completely surrounds the wrapper." Were that the case, an opening in the overwrap would led not to the food product, but only to an interior wrapper.

Kellogg's primary argument is that as a general rule, a term is considered to have the same meaning each time it is used in a claim. But that is not an iron rule; rather, it is a presumption. The Federal Circuit refers to this canon as a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *See Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001). In this case, the claim language itself makes it clear that "overwrap" is used differently in claim 34—which, again, was added after the reexamination proceedings—from its usage elsewhere in the

11

patent. The Court is unpersuaded that the presumption upon which Kellogg relies trumps the plain meaning of the term as it is used in the context of the claim at issue.

**4.     "Facing perimeter portions," "Facing overwrap perimeter portions," "Additional perimeter portions"**

The parties dispute whether the Court should define the terms "facing perimeter portions" (Claims 26, 27, 35, 41, and 44), "facing overwrap perimeter portions" (Claim 34), and "additional perimeter portions" (Claims 27, 35, and 41), with IGB arguing that it should and Kellogg maintaining that it is unnecessary.   The Court agrees with Kellogg; there is no need for the Court to construe these terms, at least not at this time.

**Conclusion**

The Court rules on the disputed claim terms as set forth in the foregoing decision.  The case is set for a telephone status hearing on October 6, 2014 at 8:45 a.m. to discuss a schedule for further proceedings.  Counsel are to jointly initiate the call to chambers (312-435-5618).  Prior to the status hearing, counsel are directed to confer to attempt to agree on a schedule.

                                                                          _____
                                                                          MATTHEW F. KENNELLY
                                                                          United States District Judge

Date:  September 22, 2014