IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERCONTINENTAL GREAT BRANDS LLC,  )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KELLOGG NORTH AMERICA )<br>COMPANY, KELLOGG USA INC., )<br>KEEBLER COMPANY, KEEBLER )<br>FOODS COMPANY, and KELLOGG )<br>SALES COMPANY, )<br>)<br>Defendants. ) | Case No. 13 C 321 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Intercontinental Great Brands LLC (IGB, formerly Kraft Foods Global Brands LLC) sued Kellogg North America Company, Keebler Foods Company, and affiliates (collectively referred to as Kellogg), alleging that Kellogg manufactures products that infringe a patent owned by IGB. The Court granted summary judgment in favor of Kellogg in August 2015. *See Intercontinental Great Brands LLC v. Kellogg N.A.*, No. 13 C 321, 2015 WL 4638032 (N.D. Ill. Aug. 3, 2015). Kellogg has submitted a bill of costs seeking recovery for numerous expenditures made in this litigation. IGB has objected to the majority of the costs requested. The Court upholds some of IGB's objections and overrules others.

## Discussion

Kellogg has moved for over $100,000 in costs. Federal Rule of Civil Procedure

54(d) states that "costs—other than attorney's fees—should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d). A court or clerk of court "may tax as costs" several different categories of expenses, including "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Courts may also tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *Id.* § 1920(4). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The Supreme Court, however, has held that the "scope of taxable costs" is "narrow," and that such "costs are limited to relatively minor, incidental expenses as is evident from § 1920." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

IGB does not dispute that Kellogg is the prevailing party for purposes of Rule 54(d), but it opposes many of Kellogg's specific requests.

**A.    Deposition transcripts**

"Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are recoverable under 28 U.S.C. § 1920(2). Kellogg originally sought $18,114.75 for costs related to procuring various deposition transcripts, but it has since revised its request to $15,156.75 (as explained further below). IGB takes issue with three items within this broad category. First, IGB contends that Kellogg should not be reimbursed for video recordings of the depositions of Jason Beach, Jon Birmingham, Walter Bratic, Patrick Daugherty, Rachel Friedstat, Karen Keeder, Paul Pezzoli, and

2

Keith Vorst. Second, IGB argues that for many of the depositions that were taken, Kellogg's quoted per-page rate of reimbursement for stenographic transcripts is too high because it exceeds the rate set by the Judicial Conference. Third, IGB says that it is inappropriate for Kellogg to request reimbursement of costs associated with having deposition transcripts shipped to defense counsel. (IGB also voiced opposition to Kellogg's request to recover $2,913.90 for producing deposition exhibits, but Kellogg has since withdrawn its request for these costs.)

As explained below, the total amount Kellogg can recover for deposition-related expenses is $13,359.45: $3,668.80 for video expenses, and $9,690.65 for printed transcripts.

**1. Video expenses**

A prevailing party may recover costs for both a paper transcript and a video recording of a deposition, but only when it was "reasonable and necessary" for counsel to obtain both. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). IGB argues that video recordings were redundant for every witness except Carl-Olaf Norlin because court reporters transcribed every deposition, the videos were not used at summary judgment, and the deponents would have been available to testify as witnesses at trial. Kellogg counters that video recordings were reasonable and necessary for all of these depositions.

First, Kellogg contends that video of the Birmingham deposition was necessary and reasonable because he is a California resident who was outside of the Court's subpoena power. The Court agrees. Birmingham was outside the subpoena power of the Court and therefore could not have been compelled to testify at trial. It was

accordingly reasonable to request both printed transcripts and a video recording of his deposition.  *See Merix Pharma. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 943 (N.D. Ill. 2015) (Kennelly, J.).  IGB will be taxed $533.80 for this video cost.

Second, Kellogg cites *Fabiyi v. McDonald's Corp.*, No. 11 C 8085, 2014 WL 2819007, at *3 (N.D. Ill. June 23, 2014), to support its argument that obtaining a video recording was necessary and reasonable for the Daugherty, Pezzoli, and Vorst depositions because the parties relied on their testimony at summary judgment.  This argument lacks merit.  For one thing, Kellogg misreads *Fabiyi*.  In that case, it was the cost of procuring printed transcripts, not video recordings, that was deemed reasonable due to the parties' reliance on testimony at summary judgment.  *Id.*  More importantly, it is not true that video is necessary and reasonable for purposes of taxing costs any time a party relies on testimony for which it has both video recordings and paper transcripts.  Both parties cited repeatedly to pages of printed transcripts from the Birmingham, Daugherty, Pezzoli, and Vorst depositions, but neither party submitted videos of these depositions for the Court to review at summary judgment.

That aside, it was nonetheless reasonable and necessary for Kellogg to procure the video recordings from the Daugherty and Pezzoli depositions—in addition to the video recordings from the Beach, Friedstat, and Keeder depositions—because IGB's counsel ordered these depositions and obtained video recordings.  Kellogg has offered IGB's notices of deposition for these five witnesses, all of which provided for video recording.  "Knowing that its opponent possesse[s] video tapes of these depositions, it [is] reasonable and necessary for [the party] to obtain copies.  In such a hotly contested case, [the party] would [be] ill-advised not to do so."  *Top Tobacco, L.P. v. N. Atl.*

4

*Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *7 (N.D. Ill. Apr. 17, 2007) (Kennelly, J.). IGB itself ordered these depositions and obtained video recordings, so it may be taxed the costs Kellogg incurred to keep pace. *Chicago Bd. of Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 CV 623, 2014 WL 125937, at *5 (N.D. Ill. Jan. 14, 2014). The Court will permit Kellogg to recover these video recording costs: $323.75 for the Beach deposition, $230.00 for the Daugherty deposition, $478.75 for the Friedstat deposition, $460.00 for the Keeder deposition, and $1,126.25 for the Pezzoli deposition (plus $516.25 for the Norlin deposition, which IGB does not contest).

Kellogg does not explain why it should be reimbursed for the cost of obtaining a video recording of the Bratic deposition, and (as explained above) Kellogg offers insufficient justification for seeking costs for the video recording from the Vorst deposition. Because obtaining video recordings of these depositions was neither reasonable nor necessary, the Court will not tax IGB for the $532.47 Kellogg spent on Bratic's deposition tape and the $478.75 it spent on Vorst's deposition tape.

### 2. Transcript expenses

Kellogg originally sought to recover a total of $9,754.75 for transcripts from nine depositions. "[D]eposition costs (including transcripts) are authorized under § 1920(2) as stenographic transcripts" and are therefore recoverable. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998). The cost of a transcript or deposition that was "necessarily obtained" may be taxed, but the cost "shall not exceed the regular copy rate as established by the Judicial Conference of the United States . . . ." Local Rule 54.1(b) (N.D. Ill.).

In response to Kellogg's original bill of costs, IGB argued that Kellogg could only

5

recover costs at the regular copy rate, even where the court reporters' actual rates exceeded the rate set by the Judicial Conference. This is certainly true for the depositions that Kellogg arranged, because generally speaking, "Judicial Conference rates apply to deposition charges by private court reporters." *Cengr*, 135 F.3d at 456. In its adjusted bill of costs (submitted in reply), Kellogg acknowledged as much and subtracted $44.10 from the amount requested for the Birmingham deposition, reducing that deposition's total cost from $504.00 to $459.90. Kellogg continues to seek full reimbursement for the cost of transcripts from the depositions that IGB arranged.

The Seventh Circuit has suggested that Judicial Conference rates do not apply "when the party who must bear the costs selected the court reporter—in other words, whoever picked the reporter can't later object to that reporter's rates." *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014), *cert. denied sub nom. Montanez v. Chicago Police Officers FICO*, 135 S. Ct. 459 (2014); *see also Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994) (observing that the losing party had "selected the court reporters and therefore selected the court reporters' fees"); *Merix Pharm. Corp.*, 106 F. Supp. 3d at 942; *Engate, Inc. v. Esquire Dep. Servs. LLC*, No. 01 C 6204, 2006 WL 695650, at *3 (N.D. Ill. Mar. 13, 2006) (Kennelly, J.). After reviewing the invoices listing Kellogg's payments for transcripts of depositions taken by IGB, with private court reporters chosen by IGB, the Court concludes that Kellogg's request for reimbursement at the private court reporters' rates is reasonable based on the per-page rates involved ($3.75 to $4.00). Accordingly, the Court taxes IGB the full cost of the deposition transcripts for the depositions that IGB arranged: $618.75 for the Beach deposition, $562.50 for the Daugherty deposition, $892.50 for the Friedstat

deposition, $1,035.00 for the Keeder deposition, $986.25 for the Norlin deposition, $2,970.00 for the Pezzoli deposition, and $1,098.75 for the Vorst deposition. Together with the cost of the Birmingham deposition and the uncontested cost of the Bratic deposition ($1,067.00), the total IGB must pay is $9,690.65.

### 3. Shipping expenses

Kellogg seeks to recover the costs associated with delivery of deposition transcripts. It argues that these costs should be recoverable because its attorneys were not in the same location as the court reporters and video services that were providing the materials and because it is the ordinary business practice of these services to deliver their transcripts and recordings. Although the Seventh Circuit has held that a district court may award deposition shipping costs as "incidentals" in the court's discretion, *see Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995), costs associated with delivering, shipping, or handling transcripts are typically non-recoverable ordinary business expenses. *See Chicago Bd. of Options Exch., Inc.*, 2014 WL 125937, at *3–4. The Court finds that delivery in this case, including delivery of electronic versions of printed transcripts, was for Kellogg's convenience and may not be recovered.

## B. Copying and exemplification expenses

Pursuant to section 1920(4), a prevailing party may recover photocopying costs for documents provided to the court or the other parties, but not for documents made for its own convenience. *See* 28 U.S.C. § 1920(4); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). The cost of converting files into electronic format is also taxable under section 1920(4). *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th

7

Cir. 2009); *Merix Pharma. Corp.*, 106 F. Supp. 3d at 944.

In its revised bill of costs, Kellogg requests $83,049.24 for exemplification and the cost of making copies. Revised Bill of Costs, dkt. no. 202-1, at 2. This includes (1) $480.02 spent on printing materials for two depositions; (2) $4,470.64 spent to make and obtain various copies of printed material; (3) $13,915.80 spent to produce exemplifications; and (4) $64,662.80 in e-discovery expenses. IGB contests each of these requests for reimbursement.

### 1.     Printing expenses

IGB first contends that the two invoices showing that Kellogg spent $480.02 to print and prepare items for two depositions are too vague to warrant full recovery, and it urges the Court to permit recovery at a significantly reduced rate. IGB also argues that Kellogg may not be reimbursed for the cost of the labor associated with preparing these items. It is true that a party need not "submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs. Rather, [the party is] required to provide the best breakdown obtainable from retained records." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). But the two invoices detailing Kellogg's expenditures do not even do this. One of the invoices states that Kellogg spent $123.60 in November 2013 for 1,545 black and white prints. Def.'s Ex. B, dkt. no. 192-2, at 2. The other simply says that Kellogg spent $348.00 to print 2,815 black and white pages and twelve color pages in February 2015. *Id.* at 3. To explain the purpose of these expenses, Kellogg points to an unidentified person's handwritten note on the first invoice stating that the prints were for "witness for 30(b)(6) depo of Kraft," and to a declaration (submitted in reply) stating that

8

the second invoice relates to printouts for a technical expert witness's deposition. There is no detail here to indicate what documents were produced, so the Court cannot discern whether they were produced for the Court, for IGB, or for Kellogg's own convenience.

The Court therefore accepts IGB's proposal and awards Kellogg one-quarter of the photocopying expenses represented in these two invoices. The Court also agrees with IGB that labor costs should be excluded from the taxed amount. The total amount Kellogg may recover from the costs shown in these invoices is $117.90.

### 2. Expenses to obtain copies of prior art

IGB next disputes whether Kellogg may recover any of the $4,470.64 it requests to cover the cost of "obtaining" copies, including expenditures on notaries public, patent retrieval services, items marked "research," and translation services. First, IGB argues that none of these costs can be reimbursed because section 1920(4) permits recovery only for "making copies," not "obtaining copies." Section 1920(4) does not specifically permit recovery for "obtaining copies." 28 U.S.C. § 1920(4). Yet it does provide that a party may recover costs incurred making copies "where the copies are necessarily obtained for use in the case." Although courts have been careful to construe section 1920(4) narrowly, they have also acknowledged that authenticated and certified copies of prior art may be crucial in patent litigation. *See Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209, 216–17 (7th Cir. 1975); *Chicago Bd. of Options Exch.*, 2014 WL 125937, at *10. It is common and necessary for parties to a patent dispute to commission notaries public and patent retrieval services to produce copies of prior art. This is true even when the word "research" appears on invoices related to these expenditures.

9

Second, IGB contends that the cost of translations cannot be taxed because section 1920(6) permits compensation only for "interpreters," not for translation services. This is true, *see Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 982–83 (N.D. Ill. 2010), but irrelevant because Kellogg seeks compensation for this expenditure under section 1920(4), not section 1920(6). As explained above, copies of documents showing prior art are often crucial in patent disputes, and if the original documents are in a foreign language, translating them into English so that the Court may understand them is part and parcel of obtaining necessary copies. IGB will be taxed $4,470.64 for Kellogg's costs securing these copies.

### 3. Exemplification expenses

Kellogg seeks $13,915.80 for demonstrative exhibits prepared for this case. These exemplification expenditures include $32.05 for cookie packages exhibiting the patented designs at issue and $13,883.75 for two elaborate visual displays. IGB does not contest Kellogg's request to be reimbursed for its purchase of the cookie packages. It does, however, contend that Kellogg should not be permitted to recover the $13,883.75 it spent on the visual presentations, each of which includes between forty and sixty slides featuring detailed animations and illustrations. *See* Def.'s Ex. 5, dkt. no. 202-5; Def.'s Ex. 6, dkt. no. 202-6. Like photocopying costs, exemplification costs may be awarded where exemplification "was necessarily obtained for use in the case." 28 U.S.C. § 1920(4). To determine whether an exemplification was necessarily produced, the Court considers "whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, is exemplification vital to the presentation of that information, or was it merely a

convenience or, worse, an extravagance?" *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000).

Kellogg's first exemplification—the cookie packages—were helpful and should be reimbursed in full. Its second exemplification, however, consisted mostly of large illustrations, reproduced images of patented technology, reproduced claim language, and written explanations of disputed claim constructions. It did little to enhance the Court's understanding of the evidence. Given its low value, the total expense involved was an extravagance that is not appropriately taxed to IGB. The Court will permit Kellogg to recover only $3,470.94 for this expenditure (one-quarter of its claimed costs), bringing the total amount of recoverable exemplification costs to $3,502.99.

### 4. E-discovery expenses

Kellogg seeks $64,662.80 in e-discovery reimbursements.[1] This includes reimbursement for (a) "processing services"; (b) printing and copying electronically produced documents; and (c) hosting services. IGB contends that Kellogg may recover only a portion of the costs accrued on processing and printing, and that Kellogg may not recover at all for hosting costs.

#### a. Processing expenses

Kellogg first argues that all of its costs for "processing services"—including costs incurred converting files to TIFF format, conducting "text extraction," inserting

---

[1] Hoping to comprehend how Kellogg arrived at its final numbers on its bill of costs, the Court has puzzled over Kellogg's invoices and materials, to no avail. By the Court's calculations, the invoices contained in Def.'s Ex. C-3, dkt. no. 192-5, add up to $13,076.60 in miscellaneous e-discovery expenses and $57,306.18 in hosting expenses, bringing the total cost of e-discovery to $70,382.78. Nevertheless, the Court will use the (lower) numbers Kellogg provides in its revised bill of costs and reply memorandum.

"slipsheet[s] for Excel files and Access [f]iles," and adding optical character recognition ("OCR") to digital files—should be recoverable. To support this argument, Kellogg asserts that "[t]he Seventh Circuit has never held that such costs are unrecoverable" and "courts in the Seventh Circuit have awarded costs for electronic discovery beyond the costs of file conversion." Def.'s Reply, dkt. no. 202, at 11.

As this Court has recently noted, the Seventh Circuit has not directly addressed the recoverability of e-discovery expenses on a bill of costs under 28 U.S.C. § 1920. *See In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *2 (N.D. Ill. Sep. 2, 2014) (Kennelly, J.). Although the Seventh Circuit has stated that the costs of "converting computer data into a readable format in response to [the non-prevailing party's] discovery requests" are recoverable under the statute, *see Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009), courts in this district are in agreement that the Seventh Circuit has not otherwise addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under section 1920. *See, e.g.*, *In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *2; *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 901 (N.D. Ill. 2014); *Massuda v. Panda Express, Inc.*, No. 12 C 9683, 2014 WL 148723, at *4 (N.D. Ill. Jan. 15, 2014); *Chicago Bd. of Options Exch., Inc.*, 2014 WL 125937, at *8.

This Court and others in this circuit have therefore followed the Third Circuit's reasoning in *Race Tires of America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012). *See, e.g.*, *Split Pivot, Inc. v. Trek Bicycle Corp.*, No. 12 C 639 WMC, 2015 WL 9593630, at *8 (W.D. Wis. Dec. 31, 2015); *In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *3; *Life Plans, Inc.*, 52 F. Supp. 3d at 902; *Chi. Bd. Options Exch.,*

12

*Inc.*, 2014 WL 125937, at *8–9; *Johnson v. Allstate Ins. Co.*, 2012 WL 4936598, at *4 (N.D. Ill. Oct. 16, 2012). Looking to the history of section 1920(4) and attempting to graft its original aims onto the modern emergence of e-discovery, the Third Circuit in *Race Tires* concluded that "only scanning and file format conversion can be considered to be 'making copies.'" *Id.* at 160. The court also determined that "gathering, preserving, processing, searching, culling, and extracting ESI simply do not amount to 'making copies,'" and it therefore taxed the non-prevailing party only costs for "the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD." *Id.* at 171. The Third Circuit specifically noted that "processing" costs were not recoverable because services leading up to the actual production do not constitute "making copies." *Id.* at 169. Other circuits that have directly considered the question have found *Race Tires* persuasive and followed its logic. *See Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1333 (Fed. Cir. 2013).

    IGB does not dispute that Kellogg should be permitted to recover costs associated with converting files into readable format, and it therefore does not contest charges for TIFF conversion. IGB does contest, however, whether Kellogg may recover for extraction, insertion, and OCR. Kellogg offers no justification for costs associated with insertion, but it insists that it should be compensated for the costs of extraction and OCR because these processes were necessary to make files fully readable and searchable and because Kellogg agreed to incur these costs in the parties' ESI stipulation.

For purposes of taxing costs, it does not matter that the parties agreed to prepare, extract, insert, optimize, and make searchable the electronic documents produced in this litigation. *See In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *5 ("[T]he production of an item as required by such a stipulation does not mean the production in question is compensable under section 1920(4)."). Instead, what matters is the extent to which these processes were fundamental to ensuring that the documents were readable. Kellogg is correct that in some cases, courts in this district have permitted prevailing parties to recover costs associated with processes other than TIFF conversion. *See, e.g.*, *Chi. Bd. Options Exch., Inc.*, 2014 WL 125937, at *9 (awarding costs for "making files readable through [OCR]"); *Johnson*, 2012 WL 4936598, at *6 (stating that costs should be recoverable for "making ESI word searchable"); *Comrie v. IPSCO Inc.*, No. 08 C 3060, 2010 WL 5014380, at *3–4 (N.D. Ill. Dec. 1, 2010) (explaining that OCR costs are permitted if documents were "OCR'd in lieu of production of hard copies"). But, as another court in this district has noted, "'readable' does not necessarily mean 'searchable.'" *Life Plans, Inc.*, 52 F. Supp. 3d at 903. Although converting files to TIFF format is the equivalent of "making copies" under section 1920(4), making a document searchable "is the equivalent of work counsel would perform in the absence of OCR." *Id.* The same can be said of "volume mastering," "unitization," "document imaging," "CD duplication," and "media formatting," which Kellogg has made no effort to show are tantamount to "making copies." Costs associated with these activities are not recoverable.

Kellogg may recover all costs associated with TIFF and PDF conversion. IGB will be taxed the full amount of costs for invoice entries detailing expenditures purely for

14

file conversion, which total $333.31. Kellogg also seeks reimbursement for $740-worth of invoice entries indicating expenditures for a combination of TIFF conversion, insertion, extraction, and OCR. Because only one of these processes is taxable, and in the absence of a breakdown, IGB will be taxed for these costs at only 25% ($185.00). Kellogg may also recover $26.57 for bates stamping, which IGB does not appear to contest and which courts in this district generally regard as reasonably necessary and taxable expenses. *See id.*; *Chi. Bd. of Options Exch., Inc.*, 2014 WL 125937 at *9. All told, Kellogg may recover $544.88 for the expenditures discussed in this section.

### b. E-discovery printing and copying expenses

Kellogg also seeks $8,660.97 for "blowbacks," or paper prints of electronically produced documents. IGB does not contest that Kellogg should be permitted to recover $1,658.92 for blowbacks shown in invoices that provide information about how those blowbacks were used. It does dispute, however, whether Kellogg should be fully reimbursed for the $7,002.05 in blowback expenditures that neither the invoices nor Kellogg's supporting materials explain or justify.

As the Court explained earlier, although section 1920(4) does not require a prevailing party "to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," it must at least provide a breakdown that makes it possible for the Court to determine whether expenditures were necessary and reasonable. *Northbrook Excess & Surplus Ins. Co.*, 924 F.2d at 643. Invoices that simply state that Kellogg spent money to obtain blowbacks, with no additional information, are not sufficient. *See Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 4506071, at *6 (N.D. Ill. Aug. 23, 2013) ("[B]ecause

Defendants do not explain these additional costs, or justify their necessity, the Court cannot conclude that they were for anything besides Defendants' convenience.").

IGB suggests that the Court should reduce Kellogg's blowback costs by seventy-five percent. In a footnote, Kellogg urges the Court to consider reducing its blowback costs by some lesser percentage, noting that the rate it paid ($0.07 to $0.08 per page) was lower than the photocopying rate this Court found reasonable in another case ($0.15 per page, in *Higbee v. Sentry Ins. Co.*, No. 97 C 1349, 2004 WL 1323633, at *4–5 (N.D. Ill. June 11, 2004)). The Court appreciates that Kellogg utilized a vendor with reasonable rates. Kellogg may recover one-third of its inadequately rationalized blowback costs, placing its total recovery for blowbacks at $3,992.94.

### c. "Concordance hosting" expenses

Kellogg has submitted invoices for "concordance hosting" adding up to $57,306.18, all of which IGB contends it should not be required to reimburse. Kellogg asserts that hosting costs were reasonable and necessary expenses because they "were unavoidable document production costs that the parties' [sic] clearly contemplated." Def.'s Reply, dkt. no. 202, at 14. It also argues that these costs should be reimbursed because without incurring them, Kellogg would have been forced to produce hundreds of thousands of pages of paper discovery, and producing these copies would have been both incredibly expensive and fully compensable.

Neither of these arguments is persuasive. As the Court explained with respect to OCR costs, 28 U.S.C. § 1920(4) is not concerned with whether the parties stipulated or agreed to the use of hosting services, but rather whether hosting can reasonably be construed as part and parcel of "making copies." And irrespective of the amount of

money saved by engaging in electronic discovery rather than extensive paper discovery, a party may not recover electronic discovery costs unless the party can show that those costs were tantamount to "making copies" and were "reasonable and necessary." Kellogg's explanations of these hosting costs—that the parties agreed to electronic discovery hosting and that storage saves money—do not show that hosting costs are reasonable and necessary. *See Massuda*, 2014 WL 148723 at *6. Kellogg's request for hosting costs is denied.

**C.   Incidental expenses**

Lastly, IGB contends that Kellogg should not be permitted to recover the $1,391.06 it seeks in costs for "incidental" expenses incurred through shipping, employing messenger services, telephone conferencing, and booking conference rooms for depositions. Relying on *Finchum v. Ford Motor Co.*, 57 F.3d at 534, Kellogg argues that "the Seventh Circuit has upheld the discretion of district courts to award such costs." Def.'s Reply, dkt. no. 202, at 15. In further support of its request, Kellogg has submitted an affidavit in which its representative states that Kellogg's incidental costs "were necessarily incurred," and Kellogg proposes that "the protracted nature of this case" justifies reimbursement for all of its various incidental expenditures. *Id.*

In *Finchum*, the Seventh Circuit did not hold that district courts may reimburse parties for any and all "incidental" costs, but rather that district courts may exercise their discretion in awarding costs incidental to depositions. *Finchum*, 57 F.3d at 534. Other than the conference room costs contained in the list of charges incurred, Kellogg provides no information that would permit the Court to infer that any of these costs were incidental to depositions. In fact, twenty-two entries on Kellogg's list of "incidental" costs

17

include no detail whatsoever; it would be impossible for anyone in the Court's position to know why Kellogg incurred any of them. See Def.'s Ex. D, dkt. no. 192-6, at 4–6. As for the two charges for conference rooms, the "protracted nature" of the case does not explain why it was "reasonable and necessary" for Kellogg to spend $318.42 to rent conference rooms for deposition prep. Kellogg's request for $1,391.06 in incidental costs is therefore denied.

## Conclusion

For the foregoing reasons, the Court approves defendant's bill of costs in part [dkt. no. 191]. IGB is taxed $22,517.86. The remainder of the bill of costs is overruled.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 26, 2016